UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BART PETRIKEN,

        Petitioner,

v.                                  Case No. 2:14-cv-56
                                  HON. GORDON J. QUIST

THOMAS MACKIE,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

        Petitioner Bart Sheridan Petriken filed this petition for writ of habeas corpus, challenging his jury conviction for owning or possessing chemical or laboratory equipment to manufacture a controlled substance involving the unlawful generation, treatment, or storage of chemical waste, MCL § 333.7401c(1)(b), and MCL § 333.7401c(2)(c). Petitioner was sentenced to 7 to 20 years imprisonment. The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision.

        Petitioner alleges that:

I. Trial counsel failed to conduct a reasonable investigation into potential witnesses, failed to investigate leads and hold the prosecutor to his proofs, failed to move for a directed verdict of acquittal, and failed to request proper jury instructions.

II. The trial court abused its discretion and pierced the veil of impartiality.

III. The trial court omitted complete jury instructions on "hazardous waste."

IV. The prosecution failed to investigate and supervise the investigation.

V. Petitioner was denied the effective assistance of appellate counsel by his counsel's failure to include crucial issues and for abandoning Petitioner and failing to address re-sentencing issues.

VI. The trial court did not have subject matter jurisdiction to hear Petitioner's case.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). The Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite

to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner claims that his trial counsel failed to reasonably investigate potential witnesses and leads, failed to move for directed verdict of acquittal, and failed to request proper jury instructions. To prevail on an ineffective assistance of counsel claim, a convicted defendant must demonstrate (1) that counsel's errors were so serious that counsel was not functioning as counsel guaranteed by the Sixth Amendment, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688-96 (1984). Stated another way, this court is to decide whether petitioner's trial counsel's alleged failures were such egregious errors as to constitute ineffectiveness and whether the alleged failures were materially prejudicial. The Sixth Circuit has explained:

> The question for reviewing courts is whether counsel's errors have likely undermined the reliability of, and confidence in, the result. *Lockhart v. Fretwell*, 113 S.Ct. 838, 842-43 (1993). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *Strickland*, 466 U.S. at 691, *quoted in Smith v. Jago*, 888 F.2d 399, 404-05 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). In evaluating petitioner's claim, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc*), *cert. denied*, 113 S. Ct. 2969 (1993). Thus, the determinative issue is not whether petitioner's counsel was ineffective but whether he was so thoroughly ineffective that defeat was "snatched from the jaws of victory." *See id.*

*West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996).

The Michigan Court of Appeals held that Petitioner's defense counsel was not ineffective, explaining:

> Next, defendant argues that his trial counsel was constitutionally ineffective. In order to prevail on an ineffective assistance of counsel

- 4 -

claim, the defendant must demonstrate that his or her trial counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and that there is a reasonable probability that, but for the error, the result of the proceedings would have been different. *People v Uphaus (On Remand)*, 278 Mich App 174, 185; 784 NW2d 899 (2008). Further, the defendant must overcome a strong presumption that his or her trial counsel's decisions were a matter of sound trial strategy under the circumstances. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000). Because the trial court did not hold a hearing on this issue, this Court's inquiry is limited to mistakes apparent on the record. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002).

Defendant argues trial counsel was ineffective because his counsel failed to adequately investigate possible defenses before trial. Specifically, defendant argues that defense counsel did not ask him about potential witnesses. When defendant's trial counsel requested that the trial court permit Skalski's testimony, counsel stated that she had just been notified about Skalski and that in her previous discussion with defendant, Skalski was not mentioned. It does not appear from the record that counsel failed to investigate possible defenses for defendant. While trial counsel did not file a witness list, counsel did not know about Skalski in time to timely add her name to a witness list if she could have filed one and the trial court did not preclude defendant from presenting his other witness. Further, as soon as counsel discovered the existence of Skalski, she did everything in her power to call the witness. Therefore, defendant has not established that trial counsel's decisions with regard to this witness fell below an objective standard of reasonableness under prevailing professional norms. *Uphaus*, 278 Mich App at 185.

\* \* \*

Defendant next argues that counsel was ineffective for failing to pursue leads that defendant provided regarding his defense. Defendant argues counsel should have pursued his theory that he was set up and the witness who called the police did so because he was given a tip. However, this claim has no merit because counsel actually did ask the witness whether he received a tip, and the witness testified that he did not. Further, "[d]ecisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy." *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Defendant has not demonstrated that any evidence would support that he was set up and he cannot establish counsel's decision not to pursue the theory

that defendant was apprehended as a result of a tip was objectively unreasonable under prevailing professional norms. Defendant also argues trial counsel did not ask the right questions while cross-examining several witnesses. However, decisions regarding how to question witnesses constitute trial strategy. *Id.* At 39. Defendant has not shown trial counsel was deficient.

Next, defendant argues that trial counsel was ineffective for failing to request a *Walker* hearing on whether the police fabricated defendant's statements about manufacturing the methamphetamine. This claim has no merit because defense counsel requested a *Walker* hearing. Defendant also argues that trial counsel was ineffective for failing to pursue the fact that the police fabricated his statements. However, trial counsel questioned the officers about whether defendant actually made the claimed statements and regarding whether defendant was threatened before he talked to the officers. Defendant further argues trial counsel should have cross-examined several witnesses concerning inconsistent statements regarding the appearance of the substance in the two-liter bottle; however, the different descriptions of the substance were addressed during the trial and defendant cannot demonstrate that any deficiency in pursuing the matter more thoroughly prejudiced him. *Uphaus*, 278 Mich App at 185.

Defendant also argues that his trial counsel was also deficient for failing to object to the chain of custody of the substance that was in the two-liter bottle. However, two different witnesses testified to the chain of custody and the record does not support an objection to the chain of custody would have had merit. Counsel is not required to make frivolous objections or motions. *People v Darden*, 230 Mich App 597, 605; 585 NW2d 27 (1998). Defendant also argues trial counsel was deficient for failing to move for a directed verdict. However, there was sufficient evidence for a rational trier of fact to find that the charged crimes were proved beyond a reasonable doubt; therefore, any motion for a directed verdict would have been meritless. *People v Riley*, 468 Mich 135, 139-140; 659 NW2d 611 (2003). Defendant also argues trial counsel was ineffective because counsel did not emphasize the fact that defendant was beginning rehabilitation. Defendant does not explain how this affected his case. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims." *People v Kelly*, 231 Mich App 627, 640; 588 NW2d 480 (1998). Next, defendant argues that trial counsel was ineffective for failing to request an instruction on mere possession of methamphetamine, which is a 10-year felony. Trial counsel's decision to proceed without

- 6 -

instruction on the crime of possession in the hope of receiving a
verdict of acquittal is a legitimate trial strategy, which we will not
second-guess. *People v Nickson*, 120 Mich App 681, 687; 327 NW2d
333(1982).

PageID.977-978, 980-981

In the opinion of the undersigned, Petitioner fails to show that his constitutional rights

to effective counsel were violated. The decision of the Michigan Court of Appeals did not result in

a decision that was contrary to, or involved an unreasonable application of, clearly established

federal law as determined by the Supreme Court of the United States; or result in a decision that was

based upon an unreasonable determination of the facts in light of the evidence presented in the state

court proceeding.

Petitioner claims that the trial court abused its discretion and pierced the veil of

impartiality. Respondent argues that Petitioner procedurally defaulted this claim or alternatively the

claim lacks merit.  However, a claim of judicial bias alleges a structural error that a criminal

defendant may not forfeit.  *Railey v. Webb*, 540 F.3d 393, 398 (6th Cir. 2008)  Nor may the claim

be subject to a harmless error analysis.  *Id.*

> [D]ue process demands that the judge be unbiased. *In re Murchison*,
> 349 U.S. 133, 136, 75 S. Ct. 623, 99 L. Ed. 942 (1955) ("A fair trial
> in a fair tribunal is a basic requirement of due process. Fairness of
> course requires an absence of *actual* bias in the trial of cases."
> (emphasis added)). Furthermore, a judge can and should be
> disqualified for "bias, [ ] a likelihood of bias[,] or [even] an
> appearance of bias." *See Ungar v. Sarafite*, 376 U.S. 575, 588, 84 S.
> Ct. 841, 11 L. Ed. 2d 921 (1964); *see also Murchison*, 349 U.S. at
> 136 ("[O]ur system of law has always endeavored to prevent even the
> probability of unfairness."); *accord Anderson v. Sheppard*, 856 F.2d
> 741, 746 (6th Cir.1988) (opining that due process "require[s] not only
> an absence of actual bias, but an absence of even the appearance of
> judicial bias").
>
> But, it is also clear that judicial disqualification based on a likelihood
> or an appearance of bias is not always of constitutional significance;

indeed, "most matters relating to judicial disqualification d[o] not rise to a constitutional level." *Fed. Trade Comm'n v. Cement Inst.*, 333 U.S. 683, 702, 68 S. Ct. 793, 92 L. Ed. 1010 (1948) (citing *Tumey v. Ohio*, 273 U.S. 510, 523, 47 S. Ct. 437, 71 L. Ed. 749 (1927) ("All questions of judicial qualification may not involve constitutional validity."); *see also Bracy v. Gramley*, 520 U.S. 899, 904, 117 S. Ct. 1793, 138 L. Ed. 2d 97 (1997) ("Of course, most questions concerning a judge's qualifications to hear a case are not constitutional ones, because the Due Process Clause ... establishes a constitutional floor, not a uniform standard. Instead, these questions are, in most cases, answered by common law, statute, or the professional standards of the bench and bar."). In only two types of cases has the Supreme Court actually held that something less than actual bias violates constitutional due process – (1) those cases in which the judge "has a direct, personal, substantial pecuniary interest in reaching a [particular] conclusion," *Tumey*, 273 U.S. 523 (subsequently expanded to include even indirect pecuniary interest); and (2) certain contempt cases, such as those in which the "judge becomes personally embroiled with the contemnor," *Murchison*, 349 U.S. at 141 (subsequently clarified to involve cases in which the judge suffers a severe personal insult or attack from the contemnor).

The Court has also acknowledged four types of cases that, although they present prudent grounds for disqualification as a matter of common sense, ethics, or "legislative discretion," generally do not rise to a constitutional level-"matters of [1] kinship, [2] personal bias, [3] state policy, [and][4] remoteness of interest." *Tumey*, 273 U.S. 523; *accord Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 820, 106 S. Ct. 1580, 89 L. Ed. 2d 823 (1986). But, in the 81 years since *Tumey*, the Court has yet to expound upon this general statement regarding the presumptive constitutional indifference to these types of issues.

*Id.* at 399-400 (6th Cir. 2008) (notes omitted). Further, the Supreme Court has confirmed that judicial rulings and opinions formed by a judge based upon the facts of the proceedings are generally not enough to show judicial bias. *Liteky v. United States*, 510 U.S. 540, 555-556 (1994).

In rejecting this claim the Michigan Court of Appeals stated:

Next, defendant argues that the trial court was biased in favor of the prosecution. Because defendant did not object to any of the alleged instances of bias, our review is for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999). The defendant must show that an error occurred, the error

was plain, and the plain error affected substantial rights, meaning the error affected the outcome of the trial. *Id.* At 763.

Defendant first argues the trial court was biased against him because the trial court believed he was guilty. He bases his argument on a comment made by the trial court during a pretrial hearing regarding the withdrawal of counsel. Defendant stated that he felt he was "entitled to a fair hearing and a fair trial" and that his appointed counsel was not guaranteeing him a fair trial. The trial court told defendant he was entitled to fair trial, and then stated: "And understand that, when you were out on bond and you started committing other felonies, there's a lot to be considered. So you are right. You have the absolute opportunity for a hearing in every case that you have. And, at the same point in time, if you are found guilty, as well, you will have the same opportunity to have the full punishment, as well. And also the ability to have a not guilty verdict, if that occurs."

Defendant has the burden of showing actual bias or prejudice in order to disqualify a judge. *People v Upshaw*, 172 Mich App 386, 388; 431 NW2d 520 (1988). The comments about which defendant complains do not suggest any bias against defendant on the part of the trial court. Thus, defendant has not established plain error. Further, defendant cannot show his substantial rights were violated by the trial court's pretrial comments. The jury was the ultimate finder of fact in this case. Defendant is not entitled to any relief on this claim.

Defendant also argues that he is entitled to a new trial because the trial court improperly emphasized certain disputed facts. "The principal limitation on a court's discretion over matters of trial conduct is that its actions not pierce the veil of judicial impartiality." *People v Davis*, 216 Mich App 47, 50; 549 NW2d 1 (1996). The test to determine whether the trial court's comments were improper is whether the comments "may well have unjustifiably aroused suspicion in the mind of the jury as to a witness' credibility, and whether partiality quite possibly could have influenced the jury to the detriment of the defendant's case." *People v Conyers*, 194 Mich App 395, 405; 487 NW2d 787 (1991) (citation, internal marks, and emphasis omitted).

Defendant argues the trial court improperly emphasized whether the substance found in the two-liter bottle could be considered "hazardous waste". See MCL 333.7401c(2)(c). Defendant argues the trial court emphasized this element by referring to the substance found in the two-liter bottle as a "chemical" and because the trial

- 9 -

court implied that the chemical was dangerous. The trial court's comments did not improperly suggest defendant was manufacturing hazardous waste. Under MCL 333.740c(7)(a), hazardous waste is defined by reference to the definition set forth in MCL 324.11103(3), which requires the waste to "cause or significantly contribute to an increase in mortality or an increase in serious irreversible illness or serious incapacitating but reversible illness" or "pose a substantial present or potential hazard to human health or the environment...." The trial court's comments did not equate the substance with hazardous waste and, consequently, could not have influenced the jury to the detriment of defendant's case. *Conyers*, 194 Mich App at 405.

Defendant also argues the trial court improperly bolstered the prosecution's expert witness when it responded to an objection by stating: "It is clear that [the witness] has gone through beginning and advanced narcotic school, that he is certified in meth laboratory responder, as well as state certification and site safety officer as it pertains to methamphetamine investigations, hazardous materials, disposal, and safety for all personnel on that." The trial court's summary of the witness's qualifications did not constitute partiality that might have influenced the jury to the detriment of defendant's case. While the witness did not specifically state that he is certified regarding "hazardous materials, disposal and safety," that description accurately summarizes the witness' testimony regarding his certification. Thus, defendant cannot show that the trial court's comments constituted plain error.

PageID.979-980

In the opinion of the undersigned, Petitioner fails to show that his claim of judicial bias has any merit. The decision of the Michigan Court of Appeals did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner next claims that the trial court omitted complete jury instructions on "hazardous waste". Typically, a claim that a trial court gave an improper jury instruction is not

cognizable on habeas review. Instead, Petitioner must show that the erroneous instruction "so infected the entire trial that the resulting conviction violates due process." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). *See also Estelle v. McGuire*, 502 U.S. 62, 75 (1991) (erroneous jury instructions may not serve as the basis for habeas relief unless they have "so infused the trial with unfairness as to deny due process of law"); *Rashad v. Lafler*, No. 09-2371, slip op. at 7 (6th Cir. Apr. 5, 2012) (same); *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). If Petitioner fails to meet this burden, he fails to show that the jury instructions were contrary to federal law. *Id.* There is no factual dispute as to methamphetamine laboratories generating hazardous waste, and there was testimony to that effect at trial. The jury found beyond a reasonable doubt that Petitioner, as he admitted, operated a methamphetamine laboratory. The jury concluded that Petitioner generated hazardous waste as a byproduct of his illegal activities. Petitioner therefore fails to show that the jury instructions were contrary to federal law or violated his constitutional rights in any way. In the opinion of the undersigned, the decision of the Michigan courts did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner claims that the prosecution failed to investigate and supervise the investigation, which allegedly amounted to prosecutorial misconduct. Misconduct by a prosecutor can rise to the level of a due process violation. *Lundy v. Campbell*, 888 F.2d 467, 474 (6th Cir. 1989). However, before habeas corpus relief becomes available, the misconduct must be so egregious as to deny petitioner a fundamentally fair trial. *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1355 (6th Cir.1993). The habeas court must consider the extent to which the claimed

misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental. *See United States v. Young*, 470 U.S. 1, 11-12 (1985). In addition, the court may view any misconduct in light of the strength of the competent proofs tending to establish guilt. *See Angel v. Overburg*, 682 F.2d 605, 608 (6th Cir. 1982) (*en banc*). "When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis ... is the fairness of the trial, not the culpability of the prosecutor.'" *Serra*, 4 F.3d at 1355 (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).

Petitioner claims that the prosecutor misrepresented and fabricated evidence by failing to test certain substances to see if they were "hazardous materials." However, the police found all of the necessary components of a methamphetamine laboratory, and Petitioner admitted to operating a methamphetamine laboratory, which produced hazardous byproducts. Between the overwhelming amount of evidence showing that Petitioner was operating a meth lab, and an expert testimony on the hazardous byproducts, there was no need for the prosecution to specifically test the residual substances in question.

In the opinion of the undersigned, Petitioner fails to show prosecutorial misconduct amounting to the violation of due process. The decision of the Michigan courts did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner next claims that he was denied the effective assistance of appellate counsel by his counsel's failure to include crucial issues, for abandoning Petitioner, and for failing to address re-sentencing issues. Petitioner claims that his appellate counsel was ineffective because counsel

did not raise on direct appeal his issues from his motion for relief from judgment. Since those claims are without merit, Petitioner's appellate counsel was not ineffective in failing to raise those meritless issues. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit'". *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010); cert. Den. 131 S. Ct. 1013 (2011) (quoting *Greer v. Mitchell*, 264 F. 3d 663, 676 (6th. Cir. 2001)). Petitioner fails to show that his appellate counsel's performance was unreasonable and fell outside of accepted professional standards. In the opinion of the undersigned, Petitioner fails to show that his constitutional right to effective counsel was violated. The decision of the Michigan courts did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner next claims that the trial court did not have subject matter jurisdiction to hear his case. Petitioner alleges that the original criminal complaint in this case was invalid because it allegedly was not authorized by the elected prosecutor, but instead an assistant prosecutor. Additionally, he alleges the complaint did not contain information to support probable cause for a warrant. However, Petitioner does not cite clearly established Supreme Court precedent holding that this would be a constitutional violation. At most, Petitioner's complaint would be a non-cognizable issue of state law. Michigan's statutory complaint procedures are a non-cognizable issue of state law and not relevant for habeas purposes. Federal courts cannot intervene in order to correct a perceived violation of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Moreover, this issue became moot with Petitioner's conviction at trial.

In the opinion of the undersigned, Petitioner's claim that the trial court lacked jurisdiction is a non-cognizable issue of state law, lacks merit and is mooted by Petitioner's conviction.  The decision of the Michigan courts did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief.  Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  The undersigned concludes that reasonable jurists could

not find that a dismissal of each of Petitioner's claims was debatable or wrong. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


Dated: June 29, 2016                                    /s/ TIMOTHY P. GREELEY
                                                              TIMOTHY P. GREELEY
                                                              UNITED STATES MAGISTRATE JUDGE